Next case on this morning's docket is the case of Vandalia Levee and Drainage District v. Fred Keck, et al. v. Don't know if it's on or off, but I think everybody knows who they are. But before we proceed to argument with the matter of procedural housekeeping that I have to take up, and that involves parish holding, our clerk of the court has just advised us that there is no notice of appeal. That is correct, Your Honor. We did not ourselves appeal this matter. We are here as a necessary defendant on the appeal that was filed by Cassie Esculet because we have an interest in how this case proceeds in the future and how this has proceeded thus far. I had called the clerk's office to ask if we needed to file an appeal on our own because the rules were not clear as to what posture we had in this proceeding. We did not choose to file an appeal of the adjunctive relief order because my client was already in the instance in the underlying matter. So we didn't have the same interest in filing the appeal, obviously, as Cassie Esculet has. So that's why we did not file an appeal, but my client would like to be heard in terms of how the proceeding in this case has affected its interest. Well, I am sorry, but I can't allow that because we have no jurisdiction under 3033. If you wanted to join in the appeal, you still have to file a notice of appeal. So having said that, I'm sorry, I can't allow that. Okay, then, Mr. Osmond, you had divided up your time. You're welcome to take back that portion. I believe I will, Your Honor. I thought you might. At this point, then, we have Ronald Osmond representing the appellant, and we have Jay Robinson representing the appellee. And I was speaking with Claire Manning regarding the carriage holdings. So that's all correct. And you may proceed when you're prepared to, Mr. Osmond. Thank you. Thank you. Your Honors, Counsel, may it please the Court. Yes. My name is Ronald E. Osmond, and I represent Kaskaskia Land Company, LLC, formerly known as Keck Land Company, LLC, in this appeal. I want to take just a few minutes of my time to go over the pleadings very quickly. I know that the Court has all the pleadings, but I do want to point out a few items in the pleadings that I think are important, especially as to the timing of when people became party defendants. This complaint was originally filed on April the 18th of 2008 by the Vandalia Levy District against Fred Keck, Parrish Holdings, and the Illinois Department of Natural Resources. No list of defendants was filed. On September the 30th, 2008, an amended complaint for injunctive release was filed by the Levy District. They added guaranteed air freight and forwarded incorporated as a party defendant.  The case proceeded to trial. Almost amended pleadings on August 23rd, 24th, and 25th in front of Honorable Judge Lackey. And on October the 28th, 2010, Judge Lackey ordered a finding for the defendants. That decision was appealed, and on December the 12th, 2012, this Court in Vandalia Levy and Drainage District v. Keck reversed Judge Lackey and remanded the case for an issue of issuing an injunction and damages. Thereafter, and this is the first time that my client, Cass Keskia Land Company, becomes involved, on March the 5th, 2013, the Levy District filed a motion to add additional parties of John Keck, Vanessa Keck, Kim Emory, Keck Land Company, and Water Fowler Express Incorporated. In that filing, and I would refer you to the record C-749 through C-754, in that filing they specifically alleged that those parties were necessary, indispensable parties to the action and were necessary in order to litigate and finalize the thing, the case. That's paragraph four and five. The Court allowed that amendment, and on April 25th, 2013, an amended complaint for appeal for injunctive relief and damages added Keck Land Company, Cass Keskia Land Company, and Vanessa Keck as necessary parties. And you know from thereafter they're referred to as necessary parties. On June the 6th of 2013, Cass Keskia Land Company filed a motion to dismiss based upon the fact that the Supreme Court precedent, the other court precedent all over the state of Illinois requires that if a necessary party is not joined that all orders are void and null. Also was based upon the fact that the amended complaint differed from the original complaint and therefore that they needed to start and have a new trial and that there was no payment for the prescriptive easement that had been found by the appellate court. Thereafter, the trial court denied that motion to dismiss on March the 4th, I'm sorry, of 2014 and on May the 22nd of 2014, ruled and issued an injunction and kept the issue of damages in effect. On June the 23rd of 2014, a notice of appeal was timely filed by Cass Keskia Land. The only issue today before the court is appellate's appeal of the trial judge's denial of Cass Keskia Land Company's motion to dismiss. Plaintiff did not cross appeal. Standard of review, as you know, is whether the judge abused his discretion. Trial Judge Mittendorf did not make any findings concerning his decision, so it is difficult to determine his reasoning. Considering his order allowing the addition of Keck Land Company, now known as Cass Keskia Land Company, and Vanessa Keck as necessary parties and allowing an amended complaint to be filed stating they're necessary parties, after judgment and after appellate court decision, the only possible reason that the judge could have arrived at that decision was he determined that, in fact, the necessary parties had been properly represented through the theory of representation. And did you represent Mr. Keck? No. Mr. Fred Keck? No, no, no, I did not. We wouldn't be here if I had. In view of the existing case law and facts in this case, the decision of the judge is per se an abuse of discretion. An order that is entered without jurisdiction of an indispensable party, and, as you know, the courts in Illinois use indispensable and necessary intermediately, is no lawyer. I'm going to, my sights are in my brief, but for brevity I'm going to leave the sights off unless the court will allow me to do so. The Supreme Court has put the matter in the strongest terms with the statement that has long been the rule that an order entered without jurisdiction of indispensable parties is no lawyer. That's cited in three different cases, and in the Sullivan case, further it's stated, it is well settled that it is fair for the trial court to proceed to final judgment without jurisdiction over all necessary parties to the litigation and any final order of judgment entered under such circumstances would be null and void as to any unjoined party. This rule is hard and fast and only bend in extraordinary situations where it is next to impossible to join all the parties indispensable to the litigation. Having said that, I'd like you to clarify some facts for me. At the time, as I understand from reading from plaintiff's brief, they became apprised during trial of the transfer to Keckland Company Trust. That's correct. Is that correct? That's correct. It's an LLC. LLC. And, of course, there had been discovery up to that time, which apparently had not been seasonably updated. I couldn't speak to that, Your Honor. I wasn't involved in that case at all. Okay. So, but I understand that there was surprise on both sides. Your Honor, I can't. I mean, all I see is what's in the brief. Okay. So I can't speak to that. So you can't speak to that at all? I can't speak to that at all. I do not know. I was months and months away from being in the case. Okay. Proceed, then. But let me just follow up on that, Your Honor. Whether or not there was knowledge by Kaskaskia Land Company is of no moment to be appealed. I'll get to that in just a minute. What if that knowledge was deliberately hidden? Is that a consideration that could be taken? It would be if there was any evidence of that. But there's no evidence that it was deliberately hidden by Kaskaskia Land Company. Was it recorded, the transfer? Yes. Yes. At what point was it recorded? About seven or eight months before the trial. There was no subterfuge and no hiding of that fact. And is it correct that the son, John, was present during most of the trial? According to the record that he was present, again, of no moment because he was not a party defendant. He did not represent anybody. He's not a party defendant under the terms of representation. So no moment to be appealed. Okay. Go ahead. This rule is hard and fast and will only bend in an ordinary situation where it is next to impossible to join all parties indispensable to the litigation. Due process requires the joiner of all indispensable parties to an action. As a result, an order entered without jurisdiction over a necessary party is void. Hornbook case law. It is well established that any party or court sui sponte may raise the issue of the absence of a necessary party at any time in the trial court or the first time in a reviewing court. That's the Oglesby case, which is important. When Oglesby goes on in Sullivan case to state when a trial court or a court of review becomes cognizant of the absence of a necessary party in the matter before it, the court sui sponte has a duty of directing the joiner's absent party. This case is unique in that it is not an issue of whether or not the defendant is a necessary party because the pleadings indicates it's a necessary party. The court indicated that they were a necessary party and allowed the amendment. That is replete within the pleadings. Why does the representation theory not apply? Because first of the representation under Oglesby is a two-part test. First, the party that is allegedly the representative has to be a party defendant. It makes sense because the party defendant has to be able to defend the position. John Keck was a member of Cass SPLM Company. John Keck was present in the courtroom, was not represented, could not speak to the court, could not present anything. He fails the first prong of the Oglesby test. Fred Keck was there, and Fred Keck was at one time the landowner. He does not properly represent Cass SPLM Company, and this court recognized that when it made its rulings and specifically ruled that they could enter judgment against Fred Keck because it was his farm equipment, his equipment on the levee, he admitted to doing the work, he admitted all of those items, and based upon that testimony that's in the order, based upon that testimony, they found that Fred Keck was liable. Wasn't he the 100% owner of the predecessor in title? Yes. And they were joined as a defendant? They mean... G.A.F.F., I believe was the name of the LLC. They were. Yes, yes, Your Honor, they were. But the issue is whether or not Fred Keck would properly represent the interest of Cass SPLM Company, and he didn't and couldn't, and the judgment that was entered by this court against Fred Keck was based upon his individual actions. There were a scintilla of evidence about Cass SPLM Company in this record anywhere doing anything wrong, not one scintilla of evidence. The doctrine of representation is very, very seldom used, and you have to be certain that, in fact, the person that's there properly represented. In page 27 of Ms. Livingston's brief, she admits, she says that Fred sat there and didn't tell anybody about it, didn't even tell his own attorney. Wasn't Fred Keck the tenant farmer of KLC? Yes. Again, Your Honor, Cass SPLM Company has had no opportunity to present any evidence, put on a witness, and yet they have had to take out 50 foot of the levy in two places. They're now subject to a potential injunction, a permanent injunction. They're now subject to potential damages and never had the first day in court. When those portions of the levies were removed, who was the owner of the land? You mean at the time of the injunction? Yes. Okay, well, after the amended complaint was filed and after the motion to dismiss was denied, court then had jurisdiction over Cass SPLM Company, ordered them to remove two 50-foot sections, which they did. And KLC was in the suit at that time? Yes, because in March the 5th of 2010, after this court's decision, Judge Mittendorf allowed them to be added as a necessary party, and they are now subject to that injunction and subject to potential damages. They had nothing to do with it and have not even been in front of a court yet. It's the biggest violation of due process I've seen in 35 years. And the doctrine of representation, when you read the briefs and you read the case, absolutely does not apply here. Fred Keck, whose attorney admitted he didn't even know about Cass SPLM Company, and Fred Keck, whose individual actions was the basis of this court's judgment in this case, none of which Cass SPLM Company did. Their positions were not aligned, and this is not a case where the doctrine of representation, and there's not even a case anywhere listed even close the doctrine of representation is used mainly for litigation when you have a state statute, mass torts, not in an issue where the trial court knew that there was a change in ownership, did not join them as a necessary party. Now we're here trying to correct that so that my client, Cass SPLM Company, can have their day in court in order to test the evidence. Otherwise, they will be and are subject to an injunction and possible damages that they have absolutely nothing to do with. Is Fred Keck still the tenant? No, Fred Keck is disabled. The record shows that his daughter is his guardian in life. Okay. We've talked about the interest and the alignment of interest of Fred Keck. I would invite the court to look at the cases, to look at this. You will come to the conclusion, I believe, that Fred Keck did not represent Cass SPLM Company. The doctrine of representation absolutely does not apply on the facts and in the law. And, in fact, it appears that the Levy District have realized that because they argued at the lower court that John Keck was the representative. Well, John Keck can't be because he wasn't a party defendant. Absolutely required. They're now trying to say that Fred Keck was representing Cass SPLM Company. The language that I was referring to out of the decision is stated on the decision. It says Keck, and the court's referring to Fred Keck, admitted that he was responsible for the levy construction at issue. He further admitted that he owned the equipment he used for both farming and levy construction on Pecan Island. Judgment against Keck is proper because his actions were at issue. Well, that's the basis of this court's judgment against Keck, and that's fine. But not against Cass SPLM Company under the theory of representation because Cass SPLM Company didn't own the property at the time that Keck did this. They did not do any of these actions. They bought the property after he did all that. No way he can be a representative. What right do you have to contest prescriptive easement since you, KLC did not own the property during any of this? Because it's now that it's flooded us, KLC property. The prescriptive easement is just an issue of payment. But that supposedly ruled that it went way back. I'm sorry? That went way back, the prescriptive easement. What the claim was, a prescriptive easement takes 20 years to, and that doesn't go way back. That's when it starts. The prescriptive easement began the day this appellate court ruled it was a prescriptive easement. And at that time, my client was the owner of that property and has not been paid for it. And if this court does not reverse this and send it back for a complete new trial, which I believe is the correct result, then I would ask that you look at my brief, and I'm not going to argue it today, on that issue because it's pretty. I mean, I know that this Livingston claims that there's no, there's, quote, no law that says that, you know, that an easement is actually of interest in land. But just read the cases, and you'll see that a levy district is a quasi-public corporation. It cannot take property without paying for it. It's not like an individual landowner. Case law is right on point. An easement is an interest in land. They're going to take that 1,000 acres, and this court has found that it's a prescriptive easement, and we don't do it over because of the necessary party not being present, then I would ask that you look at that and rule that they have to pay for that easement. But I believe, and I'm asking this court to look at it carefully, believe that you will find that, in fact, that it should be reversed. Thank you. Thank you, Mr. Oxman. You'll have the opportunity to respond. Thank you. Ms. Livingston. If this court cancels any levy district for the Mandela Levy District, of course the doctrine of representation applies because the whole issue is that they have the exact same interest. They're the owner, and the owner must have an interest in not removing the levies that this appellate court determined needed to be removed because they still haven't removed the levies. And, in fact, the representational theory with respect to ownership, Fred was a leaseholder of 450 acres on that island, and if you look at the testimony, and this is also in our appendix, you'll see that Mr. Emmerich testified that they planned to give the land back to Fred. So, of course, if you plan to give the land back to Fred, I guess Fred is representing the interest of the owner. So, you know, what's been that testimony found? It is found in the appendix on, I believe, A54. Let me tell it to you. A54, the goal is to get it back to Fred. The goal was for Fred to buy it back. So, you know, John Keck is sitting at the trial table, not in the audience. He's sitting at trial table. He's the guy who gave the judge the judicial site visit. He testified in deposition that he was the land manager for GAFL. He testified that that included him personally repairing levies. When we did the judicial site visit, he showed the judge where all the levies are. And now they want to say, well, you know, his knowledge of the lawsuit, intimate knowledge, he was there when we argued the motion for summary judgment. And the prescriptive easement, in my opinion, is a matter of law. We had 20 years of constant flooding there because he couldn't stay on top of those levies. They still don't have permits for these levies. So if they wanted to say, well, you know, we ought to be able to leave some of these levies there, well, where's your evidence of no adverse impact? By the way, when he sits here and says we've not been allowed to present any evidence whatsoever, they had a full-day hearing where they presented a guy named Dyehouse who came in and said, you know, heck-razz modeling, that's the way to do this. That's the way my guy did it. But, you know, your guy didn't do it good enough. I know how to do it, but I wasn't asked to do it, so I didn't do it. But I'm telling you, that guy didn't do good enough. Both of their witnesses testified at this hearing that the appellate court was just wrong and that there should be no levy removal whatsoever. That was their position at trial. But to sit here and say we've never even been allowed to present a witness, that's not true. Haven't been able to present a defense, I'm still here, still trying to get levies removed. You know, from the time the appellate court decided this in December of 2012, comes April 2013, we got more damage than we had ever had. And they're the owners, and those owners should be liable for that damage. And why didn't we add them as necessary parties prior to trial? Because they concealed and did not tell us. John Keck sat through motion for summary judgment. He was 50 percent owner at the time. Fred admits on the stand, and boy, we just accidentally stumbled into how many acres do you own? I don't own any. And we had just stipulated to the admissibility of the deed that it was GAFF. They transferred all of GAFF's property over to the new corporation that somehow doesn't get knowledge imputed to it, even though the case law says, whether you're in a superior position or you're in a subordinate position, if you're an agent of a corporation and you gain knowledge, that knowledge is imputed to the corporation. And that is, I have that case cited in here. That's the Lavigne case. So, you know, by the way, if you look, I've been thwarted at every effort here. I do requests to admit. They don't admit anything. I do requests to produce. They don't produce. I do 237B notices to bring them to court so we can have a hearing and find out what the answers are. They file a motion to quash and don't show up. Betsy Emrick doesn't show up on a lawful subpoena. Why? Because there's a motion to quash. You still have to show up. So we've been thwarted at every turn that we go. Why didn't we add them prior to the trial? Because we didn't know they existed. And who are they? They're Fred's good friend, and this is in the testimony in the appendix, his good friend and his son. They are insiders. And these insiders took all of GAFF's property for $4.3 million, even though Fred's testimony, which is, let me get a page number on that, Fred's testimony, which is A141. He says that Pecan Island alone is worth $6.2 million. We also have where Emrick is being asked, this is all divorce and the other case because I've never gotten access to these people, where they say, well, John Keck's financial records show the property was worth $6.4. Do you agree? And Emrick says, well, I don't know. Well, do you agree that it's worth more than you paid for it? Yeah. Okay, so if you look in the record, you'll see, too, and this is in the appendix, but I can't give you the page. I read it last night. $93,000 is the annual amount of property taxes on one of the properties in St. Louis that they got as part of this bundle of what they were doing here. So here they are. They take all of GAFF's property and some Fred Keck property, and they give it to themselves. They don't tell anybody. John Keck sits through all the proceedings. He's even deposed. They don't tell anybody, and they intend to give it back to Fred. The fact that Fred is testifying like it's his and allowing the deed to go in and John Keck's not saying a word, these people could have intervened. They knew all about it, and that knowledge is imputed to the corporation. They want to act like, well, we have corporate bail, but, you know, John Keck was there individually. They argued in their brief. You know, he was there supporting his dad. Really? Knowledge of a corporate officer is imputed to the corporation, and he was land manager for Keck Land Company until he's asked, was that until 2013? And Emmerich says, no, I think I took over at the end of 2012. Yeah? That means that while we were at trial, he was the land manager of the new corporation, just like he was the land manager for his dad's corporation, GAFF. So clearly they had representation because the leaseholder, the owner, the guy they were going to give it back to, their best friend and dad, was the guy that was defending the lawsuit. And also Parrish was there defending the lawsuit. So ownership interests are the same. They want to protect that land from levies, and it's causing backup water on us. Counsel, one thing you have complained about is the scope of the injunction and removal of all the levies. True enough. Yet that is not on appeal, is it? True that. It's not on appeal. I have filed a motion in the trial court. I can't go anywhere in the trial court. First, we don't have a judge, but second, no one wants to hear from us. So I can't even get Parrish's levies all removed, which are the first ones that get hit and damage us first, because we're tied up in this appeal, more delay. So here we are. We really knew these levies were a little silly. So the only issue on appeal is this issue raised by Mr. Osmond on the motion to dismiss. True enough. Is he the right partner? And my argument on that is very simple. They were, their interests were represented. You know, the extraordinary, you can't, you know, there has to be extraordinary circumstances for it to be fatal to not join somebody. Well, here's some extraordinary circumstances. These guys who are in a lawsuit about fraud, unbeknownst to me, Fred, they know Fred has violated a divorce order to sell that property because that's the allegation. Like one week after they violate that court order, Vanessa sues them, which is January, I guess, of 10. So they have knowledge the same year that we're doing the trial. They know that she's claiming that they fraudulently transferred. They know that they settled with her and give her money. Why? Because they had inadequate consideration, and they knew they were in trouble because you have insiders with inadequate consideration, and they concealed it, and they concealed it from us. And we qualify as a creditor because we have a lawsuit against them, and we're seeking damages. And our damages are way worse after their owner, after we got back from the appellate court, than they were before that, which is why the court also remanded for a full hearing on damages, not knowing, well, where are your damages now? So they have participated in the injunctive relief. That's why they only had to remove two sections, two 50-foot sections out of 24,000 feet of unpermitted levees. So, yeah, they've been adequately represented, and we'll be dealing with that on another day, I'm sure, when we come back. I guess we'll blame that Fourth of July weekend, and you get 10 days to cross the field. I thought it was premature since I've been deemed on another case where I had injunctive relief involved, and the court dismissed it. So in my mind, it was premature since we didn't get our damages, and that was the full remand. But at any rate, I have motions pending in the trial court. I don't know who our judge will be, but I'm not sure. I really want to answer your questions, but they concealed it, and that concealment becomes the extraordinary circumstance. And there's a history with these folks, and I do give some of that history because it bleeds into this case. I mean, they were found to have unfair dealing, and in the middle of the settlement of the fraud, there becomes another fraud. Well, we're just another victim of their concealment and their fraud. And I do think this, though, if you look at the Geoff case from the Supreme Court, it's like 1888. But if you look at that case, it says if you take land that already has a levy on it, and that levy is obstructing flow and backing up on your neighbor, you're liable for the damages while you're the owner, independent of how you got it or did you know about it or whatever. I mean, that's the case law. Now, it does say, but you're not liable for damages while you weren't the owner. Well, they were the owner before trial. So some of our damages that we even presented at trial are damages that they would be responsible for. It was remanded for damages. We're waiting for a hearing. I think I also have a motion for punitive damages pending since we have this issue of fraud involved. We really need our levies removed, but we also need damages. I mean, I have to say the levy district is a pleasure to represent. This is a governmental unit who cares about their community. They have gone to extraordinary measure to try to protect the farmland that they're protecting. They have lawful permits. They've had them for some time. The ruling of this court should be upheld. It should not be declared void because the 50% owner whose knowledge is imputed to the corporation knew all about this. He sat in the trial. So we're just flabbergasted that they want to come here now and say, make everything void. We go through a whole full trial. They don't say a word to us. By the way, they don't make any allegations that Fred failed to tell them about this. They don't try to counterclaim against Fred and say, wow, Fred, you know, you sold this property and we didn't even know it was lawsuit pending. They don't say anything like that. And, in fact, if you look at A159, you'll see in my request to admit, I asked them to admit or deny that either or both John Keck or Timothy Emmerich knew about the lawsuit between Vandalia Levy District and GAF and Fred Keck. And they say, oh, you know, we're without sufficient knowledge to either admit or deny that because, you know, we've looked through the we've done a reasonable search of the corporate memory. And they cite case law and say, and we've investigated the records and we didn't find anything. Seriously. And then they go on to say Kaskaskia Land, without waiving their objection, states that John Keck individually knew the existence of the Vandalia Levy and Drainage District versus Keck. Knew individually. His individual knowledge is imputed to the corporation. And then it says Tim Emmerich individually knew that Fred Keck was involved in a court case with the Levy District as a matter of common knowledge and gossip in the community. They spent four point three million dollars to buy this and all of GAF's property with this property having an appraisal of six point four, according to Fred. Six point two, according to Fred and six point four, according to John. So you spend all this money to get all this property. And really, you don't know that there's a loss of those levies are there. This is how if you remember this, this is how they were doing it. Let's put the levees up. And in spring, when the spring rains come, the levees will protect us from the river. Then in fall, we'll take most of the crop out, but we'll leave a lot of crop and then we'll pump the water back in and keep the water. And therefore, the waterfall will come for our crops and we'll have this perfect little wetland. So they know exactly that those levees are a big deal because without those levees, it would probably change the value of that property. So to sit here and say, well, now we don't have any knowledge. We weren't represented. It's just bologna. It is itself fraudulent. They absolutely knew the knowledge is imputed to the corporation, and they were represented by Fred Kack, who was there with the council. By the way, the Liz Pendens, I consider saying you didn't record Liz Pendens. This guy spent 20 years painstakingly rebuilding his levees. If you look at their appendix, they have all of the pages of our Exhibit 16. I wrote that down somewhere. It's Defendants Appendix 235 to 323. That's our documentation of all the levee stretches that they put in. So, you know, they know that the levee stretches are there. They know it's a big deal. John Kack has been, you know, keeping up with them with Fred Kack. They absolutely know what they're doing here, and once again, they have concealed information that has harmed someone. Unfortunately, in our case, this is not a divorce between people fighting over all their money. This is a small taxing district that protects 12,000 acres of farmland. They're very diligent. They have good relationship with the other governmental entities, and we set back our levees. We repair our levees. We're very diligent, and we have permits. And this court has ruled that it is evidence, and all the testimony, including the defendant's own engineer, testified that it is the standard of care to have a permit for your levee. And you might recall they abandoned the idea that they had been grandfathered in since 1985 because Fred didn't buy the land until 88. But this fellow who is dramatically putting up levees all the time to protect his hunting leases, he's pretty aware of what he's doing, and they all knew exactly what they were doing. And he did have this farm leasehold, too, so very happy. I'm not sure if you have any questions on anything, but the appellate court kind of talks about, in the other case, how they concocted schemes. Well, they concocted a scheme here, too. Gee, if they're not the owners, then if we did win, they would come in and say, well, you didn't bring us in. And, of course, I couldn't bring them in because we were in the appellate court and we recorded our list pendants. After we recorded that list pendants, the case was pending another 11 months in front of this court. They could have come in and said, hey, hey, wait a minute, we weren't there now. It does say you can raise this issue any time. Why wouldn't they do it? Because they were there. They were represented. This was all about Fred was going to get his property back after his friends bailed him out, and then it didn't work out. So even at the time of trial, they're intending to give it back to Fred. In fact, the depositions in this case were taken the same week as the trial. So Tim Emmerich and John Keck's testimony are actually during the trial. John had to leave for two hours to have his deposition taken. So during the trial, they're saying, you know, the plan was to give it back to Fred. So trying to get it back to Fred. Well, so here we are. At any rate, I hope that you would not request that the Vandalia Levy District go back and reprove everything that they had already proved with very competent evidence. And I frankly think our prescriptive easement is a matter of right. There was no levy district on Pecan Island since, I don't remember, 1915 or something. And he didn't get there in time for his grandfathering issue. And we stopped them and sued. By the way, I really want to address this. We are owed just compensation stuff. Okay. I hope you do look at the law. What the law says is that an easement is a property right, and it talks about governments not taking easements. Sure, if you're going to put a roadway in my land for the public, you better pay me for that. Okay. Here we're talking about a prescriptive easement. Well, what's a prescriptive easement? It's a right to not have them harm us by blocking the obstruction of law. So we're saying we have a prescriptive right to not have you obstruct us and harm us. We also have a statutory right if DNR would get in here and do their job because, you know, we don't have a permit. So they shouldn't be allowed to build the levees either. So, by the way, in the appellate decision in this case, it also acknowledges in one of the paragraphs that Fred himself testified that he was aware that there was a federal flow easement on the land. So the federal taxpayers have already paid to be able to flood that island from, you know, all the things that went on with Shelbyville and et cetera, et cetera. So that land, there's no, we should not be paying them just compensation for having them not harm our permitted legitimate legal rights. And so prescriptive easement, there's no case law on prescriptive easement, and prescriptive easement isn't really an easement per se. We don't have the right to go on your land. We don't have the right to do anything on your land. But we do have the right to not have you put up illegal, unpermitted levees that backwater on us. And if you're the owner and you took over, and you know in that Geoff case it talks about how most times when the new owner takes over, the real thing is they knew about it. They were participating in it. Well, John Keck was participating in it. He was fixing the levees. He was the land manager for GAF. Then he was the land manager for Keck Land Company. So they have knowledge. It should be imputed. They were represented to now come in and say, let's gut everything that was done. What a good strategy. Then we get to start over and spend a lot more money from this little taxing district just to try to get what we are lawfully entitled to, which is to not have our levees blown out. I don't know if you recall this from the first case, but one of the highways was closed for three months. A bridge was knocked out. Building five miles of levees is serious stuff. I think I gave you a site for the YouTube video of the damage that was done after the appeal. I haven't looked at it, so I'm not sure if it still works, but that's where we're at. And if you look at, by the way, also at the request to admit, I asked them to admit that it's been appraised at 6.2 or 6.4, since I don't know which testimony is correct. And their answer to that is, we're not going to answer that because you haven't attached the uniform, whatever they call it, and they give the whole full name of the document, the uniform, farm, leasing, the farm appraisal agreement, whatever, whatever. Yeah, well, I did a request to produce, and it's in my appendix too, and they never gave it to me, and they won't give it to me. So you won't give me a document, and then you don't have to admit that that's the real value for your insider trading here, because, you know, I don't have the document to attach, because you won't give it to me. So, I mean, it's the same, it's really their, these guys are something else. There is a lot of case law about these guys. So, anyway, here we are, and we're the people who are being harmed by their activity, and it's the same people. Thank you. Thank you. Thank you. Thank you. Mr. Osmond, would you like to speak in rebuttal? Yes, Your Honor. Thank you, Your Honor. Your Honor, I'm in a little bit of a disadvantage because I follow the rules of the appellate court in the argument. What you've just seen is the reason that I filed a motion to strike for a brief. Ninety percent of what she said has absolutely nothing to do with this appeal. All of it has been misrepresented to you. Mr. Emmer did not testify in the trial. That was a deposition. I could go on and on on the misrepresentations that have been made, but this court can figure those out. And let's just talk about the difference between knowledge and representation. We've never said that there wasn't knowledge about philosophy. There's no citation in this case, and there's no case law anywhere that says that if you're aware of a lawsuit that you believe may affect your rights, if you haven't been served, that you have to run to court and take the affirmative duty to do it. In fact, I would argue if an attorney does that, he's malpracticed because that is an issue of trial tactics that you can certainly step back and do that. Now, there's not one statute, one case, or one law against that. And because Kaskaskia Land Company chose to follow the rules, they know the law, and they chose to pay attention to what attorneys told them, it's not going to mean that somehow or another they have, quote, fraudulently done it. And let's just put this to rest. There is no filing plea in this case that says fraud at all. It all comes out of Ms. Livingston's mouth at every time she gets up to talk, and it comes from a lawsuit in 2008, Keck v. Keck, which is a marriage separation agreement. And that allegation was made of a fraudulent transfer. Now, if there was a fraudulent transfer, that is a collection statute. It has nothing to do with liability, jurisdiction, or whether you're going to get fined. It is a collection statute. And if the Drains District had appled it and proven it, then they could have set aside the transaction, end of story, no pleadings, no nothing. But every time she comes to the podium, every time, these are tricksters, fraudsters, none of it is supported in the record. We're here on one issue and one issue only, and it boils down to whether or not Fred Keck was a proper representative for Kaskaskia Land Company, and it absolutely is, he absolutely was not in accordance with this court's findings of liability was based upon his actions. So there's no way that he can be a representative for Kaskaskia Land Company, who bought the property three months before, filed the deed, and that was their involvement in it. Now, prescriptive easement. Read my briefs. Case law, Supreme Court law. Prescriptive easement by the Drains District, Kash River District, just happens to be 40 miles from my hometown. 1908, prescriptive easement, they had to pay for it. End of story. Case law is it. All you have to do is look at it. The damages that she talked about have never been proven, but they want now to come back and find Kaskaskia Land Company liable for damages that it was not even an owner of at the time. The issue that she was talking about in regards to the testimony of, quote, our experts was, again, miscited, misquoted, but that was in the injunction here. They did not testify that the appellate court was, quote, wrong. What they testified was is that they disagreed with the appellate court's decision that it had to be lowered or the letters had to be taken out. And that was gratuitous. We didn't solicit that. Ms. Livingston did. What they testified to was, was the amount of levy that they thought could be removed in order to not affect. And by the way, these levies are five miles out of this district. This is not in this district. Ms. Livingston wants to relitigate all this. I wasn't in this case then. But thank you. Thank you, Mr. Coffman. Thank you, Ms. Livingston. And we'll take the matter under advice then. Thank you. Interesting.